DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Kevin Srock has appealed from the decision of the Summit County Court of Common Pleas that accepted his guilty plea. This Court affirms.
 I {¶ 2} On March 30, 2005, Defendant-Appellant Kevin Srock was indicted on one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fifth degree. On April 14, 2005, Appellant entered a not guilty plea. A supplemental indictment was filed on May 4, 2005; Appellant was indicted on three counts of burglary, in violation of R.C. 2911.12(A)(2), all felonies of the second degree. Appellant pled not guilty to all counts in the supplemental indictment. On June 20, 2005, another supplemental indictment was filed charging Appellant with one count of conspiracy to commit aggravated robbery, in violation of R.C. 2911.01(A)(1)/2923.01, a felony of the second degree, and one count of conspiracy to commit aggravated burglary, in violation of R.C. 2911.11(A)(2)/2923.01, a felony of the second degree. Both counts contained firearm specifications, in accordance with R.C. 2941.141. Appellant also pled not guilty to those four charges.
 {¶ 3} On June 30, 2005, Appellant changed his previously entered pleas and entered guilty pleas to: three counts of burglary, in violation of R.C. 2911.12(A)(2); one count of conspiracy to commit aggravated robbery, in violation of R.C.2911.01(A)(1)/2923.01; and one count of conspiracy to commit aggravated burglary, in violation of R.C. 2911.11(A)(2)/2923.01; all five charges were felonies of the second degree. In return for his guilty pleas, the State dismissed the receiving stolen property charge and both firearm specifications.
 {¶ 4} Appellant was sentenced to six years incarceration for his three burglary convictions; six years incarceration for his conspiracy to commit aggravated robbery conviction; and six years for his conspiracy to commit aggravated burglary conviction. The sentences were ordered served concurrently and not consecutively with each other. Accordingly, Appellant's total sentence was six years incarceration.
 {¶ 5} Appellant has appealed his convictions and sentence, asserting two assignments of error.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED WHEN IT ACCEPTED A PLEA OF GUILTY THAT WAS NOT KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY MADE, AND SENTENCED APPELLANT WITHOUT PROPERLY INFORMING HIM OF HIS RIGHTS PURSUANT TO CRIMINAL RULE 11."
 {¶ 6} In his first assignment of error, Appellant has argued that his plea was not made knowingly, voluntarily, and intelligently. Specifically, Appellant has argued that while the trial court determined that Appellant's plea was knowingly, voluntarily, and intelligently made, it erred by failing to inquire into his subjective understanding of the rights he was waiving. We disagree.
 {¶ 7} The basic tenets of due process require that a guilty plea be made "knowingly, intelligently, and voluntarily." Statev. Engle (1996), 74 Ohio St.3d 525, 527. Failure on any of these points "renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." Id. A determination of whether a plea is knowing, intelligent, and voluntary is based upon a review of the record. State v.Spates (1992), 64 Ohio St.3d 269, 272. If a criminal defendant claims that his guilty plea was not knowingly, voluntarily, and intelligently made, such as we have in the instant matter, then the reviewing court must review the totality of the circumstances in order to determine whether or not the defendant's claim has merit. State v. Nero (1990), 56 Ohio St.3d 106, 108. To ensure that a plea is made knowingly and intelligently, a trial court must engage in oral dialogue with the defendant in accordance with Crim.R. 11(C)(2). State v. Sherrard, 9th Dist. No. 02CA008065, 2003-Ohio-365, at ¶ 6, citing Engle,74 Ohio St.3d at 527.
 {¶ 8} Pursuant to Crim.R. 11(C)(2):
"In felony cases the court * * * shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
"(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
"(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
"(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 9} To summarize, Crim.R. 11(C)(2) requires that a trial court determine from conversation with the defendant: 1) whether the defendant's plea was voluntary; 2) whether the defendant understood the effects of the guilty plea at the time he entered it; and 3) whether the defendant, at the time he entered his guilty plea, understood that by entering the plea he was waiving constitutional rights. "The underlying purpose, from the defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty." State v. Ballard
(1981), 66 Ohio St.2d 473, 479-80.
 {¶ 10} In determining whether the trial court complied with the constitutional requirements of Crim.R. 11(C)(2), this Court reviews the record and if the record shows that the trial court "engaged in a meaningful dialogue with the defendant which, in substance, explained the pertinent constitutional rights `in a manner reasonably intelligible to that defendant[,]'" the court's acceptance of the guilty plea should be affirmed. State v.Anderson (1995), 108 Ohio App.3d 5, 9, quoting Ballard,
66 Ohio St.2d at paragraph two of the syllabus.
 {¶ 11} A review of the sentencing transcript in the instant matter indicates that Appellant entered his guilty pleas knowingly, voluntarily, and intelligently. Our conclusion is based on the following portions of the record. When discussing the arranged plea agreement, the State stated that part of the agreement was an agreed sentence of "six years at the Ohio Department of Corrections." Appellant's counsel was asked if he agreed with the State's representation of the agreement and he answered yes. In exchange for Appellant's guilty pleas, the State dismissed one felony count of the indictment and both firearm specifications. The trial court then discussed the specifics of the plea agreement with Appellant. The trial court described each count to which Appellant was pleading guilty by naming the charge, describing the date and location of the offense, explaining the elements of each crime, and listing the degree of the offense. After each explanation and description, the trial court asked Appellant if he understood what the court had just said and each time Appellant answered "[y]es, sir." The trial court also explained the possible penalty for the degree of the offense and asked if Appellant understood its explanation; Appellant again answered "[y]es, sir." After the trial court ensured that Appellant understood what he was pleading guilty to and the possible penalties for the pleas, the following colloquy occurred between the trial court and the Appellant:
The Court: "You will receive six years on all those cases. You understand that?"
Appellant: "Yes, sir."
 {¶ 12} The trial court then explained Post-Release Control and asked Appellant if he understood the explanation. Appellant answered "[y]es, sir." The trial court then informed Appellant that by entering a guilty plea he would be waiving or giving up his right to a trial by jury where he must be found guilty beyond a reasonable doubt. The trial court also explained that Appellant would be giving up his right to confront or cross-examine witnesses against him. The trial court then asked Appellant if he understood and he answered affirmatively. The trial court next explained that if he decided to go to trial Appellant could not be forced to testify, but he could force or compel witnesses to come to court and testify for him. The trial court then asked if he understood that by entering a guilty plea he would be giving up all those rights and Appellant answered: "Yes, sir, I do." The following colloquy occurred before the trial court accepted Appellant's guilty pleas:
The Court: "All right. Now, as far as any of those five counts, I read them to you, I told you the possible penalty and the actual penalty that you're going to receive, the six years, and the rights you're waiving to trial. Do you have any questions of me on any of those things?"
Appellant: "No, sir."
 {¶ 13} Appellant then entered guilty pleas as laid out in the plea agreement and the trial court informed Appellant's counsel and Appellant that it would "accept those pleas as knowingly, voluntarily, and intelligently made."
 {¶ 14} Prior to the imposition of sentence, Appellant made a brief statement to the court and victims. He apologized for his crimes and stated that he knew he was going to "pay for" his crimes, but made no indication he did not understand his guilty pleas or any other part of the proceedings. Appellant stated that he graduated high school and attended college.
 {¶ 15} The trial court then asked Appellant if he had any questions regarding the sentence he would receive and he answered: "No, sir." After hearing from two of Appellant's victims, the trial court sentenced Appellant according to the plea agreement to a total of six years incarceration.
 {¶ 16} The discussion between the trial court and Appellant demonstrates that the trial court complied with Crim.R.11(C)(2)(c) and informed Appellant of the constitutional rights he would be waiving by entering a guilty plea. It also demonstrates that Appellant made his plea knowingly, voluntarily, and intelligently. Appellant answered affirmatively to each question posed by the court as to whether he understood the plea and its ramifications. Specifically, Appellant stated he understood the crimes to which he was entering guilty pleas and the sentences he would be receiving. Moreover, the trial court found that Appellant's plea was knowingly, voluntarily, and intelligently made. Appellant did not object to said finding and the trial court was not required to ask if its conclusion was accurate. We find the fact that Appellant was told the sentence he was going to receive, which was part of the plea agreement, indicative of his knowingly, voluntarily, and intelligently entering his guilty pleas. It is clear from the transcript that Appellant was responsive to questioning and he stated on more than one occasion that he understood the proceedings and the trial court's statements.
 {¶ 17} Based on the foregoing analysis and a review of the record, this Court concludes that the trial court did engage in a meaningful dialogue with Appellant and did communicate the ramifications of the waiver of his constitutional rights in a reasonably intelligible manner. See Anderson,108 Ohio App.3d at 9. Thus, we conclude that the trial court complied with Crim.R. 11(C)(2)(c) when accepting Appellant's guilty pleas and that Appellant made a knowingly, voluntary, and intelligent waiver of his constitutional rights. We also find that based on the totality of the circumstances, specifically, Appellant's dialogue with the trial court and the trial court's finding that his plea was knowingly, voluntarily, and intelligently made, that Appellant's plea was knowingly, voluntarily, and intelligently made. See Spates, 64 Ohio St.3d at 2727-3. Therefore, we find that the trial court did not err when it accepted Appellant's guilty pleas. Accordingly, Appellant's first assignment of error is not well taken.
 Assignment of Error Number Two
"APPELLANT SROCK WAS DENIED HIS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY VIRTUE OF HIS COUNSEL'S FAILURE TO FULLY INFORM HIM OF THE NATURE OF PLEA NEGOTIATIONS AS WELL AS THE CONSEQUENCES OF ENTERING A PLEA OF GUILTY."
 {¶ 18} In his second assignment of error, Appellant has argued that he was denied the right to the effective assistance of trial counsel. Specifically, Appellant has argued that his counsel did not fully advise him about the nature of the plea agreement and if he had so advised him, Appellant would not have agreed to give up his right to a trial by jury. We disagree.
 {¶ 19} Appellant bears the burden of proof in a claim of ineffective assistance of counsel. State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 49. Appellant must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v.Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Lott
(1990), 51 Ohio St.3d 160, 174, certiorari denied (1990),498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596.
 {¶ 20} In order to overcome his burden and establish an ineffective assistance of counsel claim, Appellant must satisfy a two-prong test. First, Appellant must demonstrate that trial counsel's performance was deficient. Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. To establish a deficiency, Appellant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed Appellant by the Sixth Amendment. Id. Appellant must identify the acts or omissions of his attorney that he claims were not the result of reasonable professional judgment. State v. Palmison, 9th Dist. No. 20854, 2002-Ohio-2900, at ¶ 31. This Court must consider the facts of this particular case as they existed at the time of trial counsel's conduct and then we must decide whether counsel's conduct fell outside the range of that which is considered professionally competent. Id.
 {¶ 21} To prove his claim of ineffective assistance of counsel Appellant must also demonstrate that he was prejudiced by his trial counsel's deficient performance. Id. at ¶ 30. Prejudice entails "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258, 111 L.Ed.2d 768. This requires a showing that counsel's errors were so serious as to deprive Appellant of a fair trial.Strickland, 466 U.S. at 686-687.
 {¶ 22} Specifically, with regard to guilty pleas, "`the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty.'"State v. Xie (1992), 62 Ohio St.3d 521, 524, quoting Hill v.Lockhart (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203.
 {¶ 23} In the instant matter, Appellant has argued that his counsel did not fully advise him of the plea agreement and if he had been so advised he would not have waived his right to a jury trial. The record, however, does not support Appellant's argument.
 {¶ 24} A review of the sentencing transcript shows that Appellant's counsel explained to the trial court that he read Appellant his supplemental indictment and he was satisfied that Appellant understood the charges contained therein and their possible penalties. Appellant's counsel also stated to the trial court that he fully discussed the Crim.R. 11 negotiations with Appellant and he was satisfied that Appellant understood the discussion. Appellant was present in court during his counsel's statements and he did not challenge or dispute them. In fact, right after Appellant's counsel stated that Appellant understood the plea, the trial court began its inquiry of Appellant and Appellant did not voice any concerns, questions, or statements of confusion regarding the plea agreement or the proceedings. Specifically, the record is void of any evidence that Appellant did not understand his waiver of a right to trial by jury. Moreover, during the sentencing proceedings, the trial court informed Appellant and the State, that Appellant's counsel "performed a service * * * because hearing [the facts of the case the trial court] probably would have given [Appellant] at least double [the sentence agreed upon in the plea agreement.]"
 {¶ 25} After reviewing the record and Appellant's brief, we find that Appellant has not provided sufficient evidence to demonstrate deficient performance. The record reveals that Appellant's counsel reviewed the plea agreement with him and that the trial court ensured that Appellant understood the plea and was entering it in a knowing, voluntary, and intelligent manner. Based on the foregoing, this Court finds that Appellant has not demonstrated ineffective assistance of counsel in regards to his plea agreement. Moreover, we find that Appellant has not demonstrated that he would not have agreed to the plea agreement had his counsel's performance been different; the record shows that Appellant was made aware of exactly what he was pleading guilty to, the elements of all the charges, the charges that were being dismissed, the ramifications of pleading guilty, the rights he would be waiving, and the sentence he would receive for pleading guilty under the agreement. This Court cannot fathom what other information or counsel Appellant needed to enter his plea and Appellant has failed to point to any information or counsel he was lacking. We cannot find a reasonable probability that had Appellant received additional or different information or counsel, he would not have pled guilty. See Xie, supra. Accordingly, Appellant's second assignment of error lacks merit.
 III {¶ 26} Appellant's two assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Moore, J. Boyle, J. concur.